JOHN DOE, *ex dem.* ELLEN FRISBY *et al.*, plaintiffs in error, *v.* CHARLES BALLANCE *et al.*, defendants in error.

### *Error to Peoria.*

Bogardus conveyed to Underhill certain premises for a valuable consideration. The deed contained the words "grant, sell and convey," and "all my right, title and interest," &c.; and concluded thus: "To have and to hold the same unto the said Underhill, his heirs and assigns forever, with all the privileges and appurtenances thereunto belonging." Subsequently, Bogardus, who previously had not the fee in the premises, obtained a Patent therefor from the United States; *Held*, that the fee in the premises enured under the statute to Underhill and his assigns.

*Ejectment*, brought by Lewis Bigelow and Isaac Underhill, in the Peoria Circuit Court, to the May term 1838. The suit was to recover a part of the south east fractional quarter section nine (9), township eight (8) north, range eight

(8) east of the fourth principal meridian.    Bigelow died, and Ellen Frisby *et al.*, were made parties as his heirs.

The plaintiffs read to the jury a Patent from the United States to John L. Bogardus for the said land, and dated January 5th, 1838.

The plaintiffs then proposed to read to the ·jury a deed from said Bogardus to Isaac Underhill, one of the plaintiffs, which deed was duly acknowledged and proved, and which was dated August 5th, 1834, and conveyed said land to said Underhill.    To the reading of this deed to the jury the defendants objected, and the objection was sustained and the deed excluded.    The plaintiffs excepted.    The jury found for the defendants, and the Court gave judgment for them. The error assigned is the exclusion of this deed.

The cause was heard at the May term 1845, before the Hon John D. Caton and a jury.    Verdict for the defendants.

*E. N. Powell,* for the plaintiffs in error.    *A. Williams &* *A. Johnston,* upon the same side, filed the following argument in writing:

1.  The technical distinctions, which existed at common law, between the various kinds of conveyances, and the circumstances necessary to give them operation, have been greatly relaxed by modern decisions, and sometimes entirely abolished by statutes, especially in the United States.    Thus a a deed of release and quit claim, (the lowest in the scale of assurances,) which, according to the old common law, could not operate without a previous interest or possession, being vested in the releasee, has been repeatedly held sufficient, as an original conveyance to transfer the fee, both in Illinois and in other States.    And it is affirmed generally, that the Courts look to the intention of the parties and the purport of the conveyance, more than to any technical rules, touching the form or construction of the deed.

These positions are fully and broadly sustained in the following cases:    *Ray* v. *Pierce,* 7 Mass. 384; *Bridge* v. *Wellington,* 1 do. 219; *Russell* v *Coffin,* 8 Pick. 143; *Bronson* v. *Paynter,* 4 Dev. and Battle, 395; *Reformed Dutch Church*

v. *Veeder*, 4 Wend. 496; and in our own State, *McConnell* v. *Reed*, 4 Scam. 121; *Willis* v. *Watson*, Ib. 66; with which compare the Revised Code of 1833, page 129, statute of "Conveyances," §§ 2.

2. At common law, where a person having no title, conveyed by lease or deed to another, if a covenant were contained in the demise or deed, either *express* or *implied*, any estate, afterwards acquired by the lessor or grantor, would accrue to the benefit of the lessee or grantee, and would support the estate conveyed to him.  If, indeed, the grantor had any estate or interest at the time, which did pass by the grant, the rule did not apply.  But where he had no estate at the time of the grant, the estate subsequently acquired enured to the benefit of the grantee, by way of *estoppel*, and the *estoppel* was regarded as an interest, running with the land to the heirs and assigns of the grantee.  In support of this doctrine see 2 Thomas' Coke, 333, 417; *Goodtitle* v. *Morse*, 3 Term R. 365; *Gilman* v. *Hoare*, 1 Salk. 275, and next case, 276; 4 Com. Dig. *Estoppel*, A. 2, A. 3, B; 4 Kent's Com. 98.

And the beneficial rule of the common law has been extended in American decisions, conformably to the practice alluded to already, so as to apply to cases where there was no express warranty, and in which there were no words at common law implying a warranty.  *Jackson* v. *Bull*, 1 Johns. Cases, 90; *Same* v. *Murray*, 12 Johns. 203; *Same* v. *Stevens*, 13 do. 316; *Same* v. *Fisk*, 10 do. 456; *Carver* v. *Jackson*, ex dem. *Astor*, 4 Peters' 85–6.

In the case of *Jackson* v. *Fisk*, above quoted, especially, the conveyance was a mere release, and the only title of the releasor was acquired subsequently to the conveyance.  And in the case of *Jackson* v. *Stevens*, the Court says, that in the absence of any proof as to the object of the grantor in procuring the title after his conveyance of the land, it will be presumed that he purchased it, for the purpose of supporting and making good his own deeds.

3.    But, at all events, we conceive that the question, whether a title subsequently acquired will enure to support a previous

conveyance in a case like the present, is decisively settled by the statute law of the State.

In the Revised Code of 1833, page 131, section 7, it is enacted, that "if any person shall sell and convey to another, by deed or conveyance, purporting to convey an estate in fee simple absolute, &c., not then being possessed of the legal estate or interest therein at the time of such sale or conveyance, but after such sale or conveyance the vendor shall become possessed of, and confirmed in the legal estate, &c., it shall be taken and held to be in trust, and for the use of the grantee or vendee, and the conveyance aforesaid shall be held and taken, and shall be as valid, as if the grantor or vendor had the legal estate or interest, at the time of said sale or conveyance."

"An estate in fee simple absolute," is an estate which is limited absolutely to "a man, and his heirs and assigns forever," without any limitation or condition. The term "estate" has no relation to the title, or the description, or character of the thing conveyed. It denotes the quantity of interest in the thing conveyed, whether it be an estate for years, for life, or in fee; whether in possession or expectancy; and whether absolute or conditional. A deed, therefore, like the one in this case, which purports to convey to a man an interest in land, "*habendum* to him, and his heirs and assigns forever," is a deed "purporting to convey an estate in fee simple absolute."

This construction of this statute has been incidentally made by the Supreme Court of this State, in the case of *Willis* v. *Watson*, 4 Scam. 67, in which the question was presented, as to the operation of a will to pass lands, which were acquired subsequently to the execution of the will. The statute is there referred to, and commented on in the same view as that here presented, and the principle established by it is applied to the case then before the Court.

This statute, therefore, supplies all that is wanting, (if any thing were wanting in the decisions already referred to,) to complete the title in the plaintiff's lessor, or in Underhill, through whom the title was derived. It is substituted for

the covenant, express or implied, of the common law, and it does the office of the covenant, in creating an *estoppel,* which shall bind the grantor and all persons claiming under him; which is attached to the land, and runs with it to all the heirs and assigns of the grantee, and which conveys to them an estate in fee simple absolute, not to be defeated except by a paramount title. It furnishes conclusive and binding evidence of the intention of the grantor to support his conveyance, by causing a subsequently acquired title to enure for that purpose, instead of the presumption to that effect, which arises from the absence of any explanation, in the case of *Jackson* v. *Stevens,* before referred to.

*J. Butterfield,* [for the defendants in error, cited *Somes* v. *Skinner,* 3 Pick. 52; *Comstock* v. *Smith,* 13 do. 120; *Blanchard* v. *Brooks,* 12 do. 66.

*A. Lincoln* concluded the argument in behalf of the plaintiffs in error.

The Opinion of the Court was delivered by

SCATES, J.* *Ejectment.* After reading to the jury a Patent from the United States to one John L. Bogardus, bearing date the 5th day of January, 1838, for the premises in question, the plaintiffs offered to read in evidence a deed from said Bogardus to one Isaac Underhill for the same premises. To this the Court sustained the defendant's objection. This was excepted to, and is assigned for error. The deed was as follows: "Know all men by these presents, that I, John L. Bogardus, of Peoria, of the county of Peoria and State of Illinois, in consideration of one thousand and fifty dollars to me in hand paid by Isaac Underhill, of said Peoria, the receipt of which I do hereby acknowledge, do hereby grant, sell and convey unto said Underhill, all my right and interest in and unto the south east fractional quarter of section (9), in township (8) north, range (8) east of fourth principal

* WILSON, C. J., and PURPLE, J., did not sit in this case.

meridian, in said Illinois and also in and unto the ferry established across the Illinois river in said Peoria together with all the boats and other implements thereunto belonging. To have and to hold the same unto the said Underhill, his heirs and assigns forever, with all the privileges and appurtenances thereunto belonging. In witness whereof, I have hereunto set my hand and seal, this 5th day of August, A. D. 1834.

John L. Bogardus." [Seal.]

Signed, sealed and delivered in presence of Orin Hamlin."

It was duly acknowledged before a justice of the peace on the same day, and recorded on the 13th day of the same month.

It is contended by the plaintiffs, that although Bogardus had no title in fee to the land at the date of his conveyance, yet that he is estopped by that deed from setting up the title he afterwards acquired from the United States to defeat it, and so are all those who claim under him. The counsel for the defendants contends, that where a party has neither possession, nor a vested interest, or no interest at all, a release or quit claim deed without warranty will not operate as an estoppel.

Here is no warranty, and they contend that it is a mere quit claim, and could only pass such an interest as Bogardus had at the time.

Kent says, leases can operate as an estoppel when they are not supplied from the ownership of the lessor, but are made by persons having no vested interest, such as an heir apparent, or person having a contingent remainder, or an interest under an executory devise, or one who has no title whatever. But if the lease takes effect, by passing an interest, it cannot operate by way of estoppel, although it cannot otherwise carry the full interest, according to the intention of the parties. 4 Kent's Com. 98. But where one who has no interest in the land, undertakes to convey or demise, and he afterwards acquires title, an interest passes to the grantee by way of estoppel; and if there be a warranty, it not only estops the grantor, but a subsequent purchaser from him. Ib.

The estoppel runs with the land in such case, and Lord Kenyon was inclined to the opinion, that the purchaser would be estopped without warranty. But the authorities are conflicting on this point. Ib., note *a* and *b*.

Most of the cases cited from the Massachusetts Reports are cases of warranty. In the case in 13 Pick. 116, the defendant was tenant of one Waters; the plaintiffs disseized him, and conveyed to him in fee, with warranty against themselves and those claiming under them. The tenant reconveyed in fee with like warranty, and then took a conveyance in fee from Waters, to whom he was tenant at first. It was *held*, that the tenant's deed to the disseizors was no estoppel.

The question in 12 Pick. 47, was, whether a creditor of John Soley, who had levied and taken his interest in execution immediately upon its vesting, was estopped by Soley's deed to respondent, Gassner, with warranty. Soley had, at the time of the deed, a vested interest in part, and an interest dependent upon a contingent executory devise, to take effect from the happening of an uncertain contingency. The Court held, that the conveyance of all "his right, title and interest" in and to the lands was fully satisfied by applying it to the vested interest, and as to the contingent interest, he was not estopped.

The case in 3 Pick. 52, is upon complicated facts. W. S. Skinner made a deed to his father in March, 1805, and which was not recorded until 1807. In July, 1805, he made a mortgage to one Codman without notice of the previous deed. Codman, in 1811, released and quit claimed to plaintiff's intestate; on the same day the intestate quit claimed and released to W. S. Skinner, who executed back a mortgage to intestate. The father continued all the time from 1805 until his death in 1813, in possession. After his death, his son, John Skinner, took possession, and this action was brought to recover it under the mortgage to plaintiff's intestate. It was *held*, that the defendant was not estopped by the deed of mortgage to intestate, although he derived title through his father from the mortgagor. For, by the release and quit

claim from intestate to W. S. Skinner, the mortgagor, the deed from him to John Skinner, the father, was let into priority of the second mortgage, although it had been postponed to the first mortgage for want of record or notice.

In 7 Mass. 381, a quit claim and release, which, for any thing appearing upon the record, would have been bad as a conveyance for want of seizin in the releasor, yet was held to be good as a covenant to stand seized to an use, and so made to effectuate the intention of the parties, by the operation of the statute in executing the use.

A very similar decision, in effect, was made in 4 Wend. 494, where the Court presumed a conveyance creating a lesser estate, in order to support a release creating such an use as would be executed by the statute, and so vested the true interest intended by the parties. So, again, in 10 Johns. 456, the words "have remised, released, and forever quit claimed" were held sufficient to raise an use, which the statute of uses executed, and so a fee was acquired by one who took the release seven years before the releasor acquired the fee.

I have thus far reviewed some of the decisions cited and relied on on both sides, and the strongest for each. I do not deem it important to review more.

If the question here was to be settled by the doctrine of estoppel, authorities might be found in the cases cited, and others for admitting and rejecting it as a mere quit claim. But the question is more easily disposed of under our statute, as well as by the character of the deed itself.

I come now to consider this question under our statute. Livery of seizin is not required by our law. Rev. Stat. 102, § 1. Conveyances are good, although grantor is out of possession, and another may hold adversely. Ib. 103, § 4. Where any one may be seized to "the use, confidence, or trust" of another, the statute executes the use to the possession. Ib. § 3.

The words "grant, bargain, sell," in a deed, import an express covenant to the grantee and his heirs, that the grantor was seized of an indefeasible estate in fee, free from

incumbrances by grantor, and also for quiet enjoyment as against grantor and his heirs.   Ib. 105, § 11.

And again, whenever one conveys by a deed purporting to convey an estate in fee simple absolute, and has not then the legal estate, but afterwards acquires it, "it shall be taken and held to be in trust and for the use of the grantee or vendee, and the conveyance aforesaid shall be held and taken, and shall be as valid as if the grantee or vendor had the legal estate or interest at the time of said sale or conveyance." Ib. 104, § 7.

"Every estate in lands which shall be granted, conveyed, or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words," or by operation of law.   Ib. 105, § 13.

This last provision, it is true, was not enacted until after this conveyance, but it tends to illustrate and explain the meaning of the other provisions in reference to conveyancing in this State.

If this deed should be regarded only as a covenant to stand seized, as in the case of 10 Johns. 456, still the statute would execute the use according to that decision.   This deed has only the words, "grant, sell, and convey;" and in 5 Alabama, 586, the Court held, under their statute, containing the same words as ours, that the statute would not help a deed which omitted one of the words, for, being in derogation of the common law, it must be construed strictly.

I do not intend to discuss the propriety of this interpretation, nor shall I discuss the distinction taken on the argument between a conveyance by release, or quit claim of all right, title and interest in land and a conveyance of an estate in the land.   Words importing to quit claim, and release an interest, naturally, in common and legal parlance, pre-supposes that there is an interest upon which it is to operate; and by such language, interests are conveyed where interests exist.   But this deed uses words of inheritance, for in the *habendum et tenendum*, it is to him and his heirs forever.

Surely no one would contend that the fee would not have passed, if it had been in Bogardus, and passed too, by this clause in the deed. Why, then, limit the meaning of these terms, because the fee was not in him at the time? He has since acquired it, and the statute will make it enure to the benefit of the grantee, if the fact of the want of title is not to restrain the meaning of the words. It is true, if he had not afterwards acquired it, the clause could only have operated on such interest as he had, and the statute could not aid it; for the grantee may have been without covenants to compel him, unless the words "grant and sell" alone, should import such covenant. But it seems to me, that the very case that might have been contemplated by the Legislature, arose here, for the deed would have conveyed all his estate in the land, even a fee, being founded on a valuable consideration; now having acquired that fee, it must enure under the statute.

Again, he has used words importing an estate in fee, and has not qualified or limited it, which is a very just and full interpretation of the spirit of the former provisions of the several Acts.

We are of opinion that the deed conveys an estate in fee simple, and was therefore admissible in evidence.

The judgment of the Court below is reversed at the cost of defendant, and cause remanded, with directions to award a *venire de novo.*

                         *Judgment reversed.*